ARTHUR J. MONAHAN *vs.* JOSEPHINE F. MONAHAN *et al.*

OCTOBER 14, 1955.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

FLYNN, C. J. This bill in equity was brought by a husband against his wife for an accounting in relation to certain securities and savings accounts allegedly owned jointly, and for incidental relief by way of an injunction to prevent her from transferring or withdrawing any of such assets. After a hearing in the superior court on bill, answers and proof a decree was entered granting all the relief prayed for including an equal division of the assets, and the cause is here solely on the respondent wife's appeal from that decree.

The Industrial Trust Company, the other respondent, had no interest in the subject matter and was made a party only because certain of the securities and accounts in question were kept in its bank. The hearing was complicated considerably because of the nature of the pleadings and the manner in which the evidence was presented. Some extraneous issues and evidence were thereby injected into the hearing when they related more properly to a divorce case which was pending and not tried. Consequently our summary of the claims and evidence of the parties will be only in general terms from the transcript which is lengthy.

It appears that the parties were married June 27, 1936; that at the time the wife had been working many years for

the telephone company and by payroll deductions and savings from her wages had already acquired equities in certain stocks, building and loan certificates, and bank accounts; and that the husband then had no savings account and no substantial equity in any securities. For some time after marriage the wife did not work but continued to make weekly payments on her shares of stock and building and loan certificates from her prior savings and wedding gifts of cash.

In 1939 she desired to return to regular work with the telephone company. The complainant claimed he consented thereto only because of an oral agreement made at that time which he testified was as follows: "The understanding was that she was to work. She said while she was young she wanted to work so that we could accumulate money enough so that when we got old we would have money. That was our only understanding with regard to money. Everything I ever knew of concerning either one of us was in both names. I was under the assumption that everything we both made was thrown into one account. That was the only understanding we ever had. That is the way it started and that is the way it finished."

The complainant also testified that accordingly he turned over to his wife all his weekly wages except $12 which were necessary for designated expenses in connection with his work as a bakery truck driver and later as a salesman in another line; and that he also made certain larger contributions by his commission checks, by the proceeds from the sale of an automobile, by a fishing prize of a United States war savings bond, and by certain other war savings bonds which he had accumulated out of his wages while working for the shipyard during the war.

On the other hand the respondent denied there was such understanding or oral agreement, and she denied that he ever gave or showed to her any of his commission checks with two exceptions, which she accounted for. She testified

that she continued to work, save, and purchase stocks and building and loan certificates of the telephone company and to establish bank savings accounts, entirely out of her own earnings; that with the exception of two payments of $5 or $10 complainant made no contributions toward the purchase of any of these stocks or certificates, or to any savings account out of which the securities in question were purchased in her name; that later, when she was about to undergo a serious operation, she had them made payable to both as a matter of convenience and not to confer ownership on complainant in assets he never contributed to at all; and that later with his knowledge the bulk of such securities were transferred back to her own name.

She also testified that complainant gave her only $22 a week for the entire support of herself and the household, including her clothing; that against her wish he had taken one winter vacation in Florida although he knew he would thereby lose his job, which he did; that contrary to her desire, in order to take another winter vacation in Florida he had her cash and deliver to him the value of the savings bonds which had been purchased by him out of his wages at the shipyard; that he had gone to Florida on three such vacations without taking her; and that he was greatly interested in sports and fishing and was extravagant in his dress, all of which took a great deal of his time and money.

Upon this and other evidence the trial justice made his decision and thereafter entered a decree which contained a finding that in 1939 the parties had made a definite agreement to work and pool all their earnings for their mutual benefit and thereby created a joint tenancy in all of said funds and investments; and a further finding that the parties were joint owners, each having a one-half proprietary interest in certain securities having a total valuation of $11,330. The decree, which listed those securities, also ordered that respondent deliver to complainant one half of them in kind, or in the alternative to pay forthwith a sum

equivalent to one half the value of said funds and securities, that is, a net amount of $5,665; and also to account to complainant for dividends, interest and income derived from said securities and funds for the period commencing March 8, 1951, the date of the separation of the parties, to the date of said accounting.

The respondent's reasons of appeal are nine in number but according to her brief actually present only two questions: First, whether complainant sustained his claim to a one-half interest as joint owner of the assets now in respondent's possession and enumerated in the decree; and second, if such ownership has been established, whether a full accounting between the parties should have been ordered in accordance with the prayer of the bill and the provisions of general laws 1938, chapter 590, §2.

As to the first question, respondent contends that the undisputed evidence shows that each and all of the shares of stock, building and loan certificates, and war savings bonds, listed as being in respondent's possession, were purchased entirely out of payroll deductions from her wages and out of savings accounts established by her solely from her own wages or property; and that complainant, by his own admission, never had a bank account, knew nothing of these stocks, certificates, or bank accounts, and had not contributed directly to any of them. If the question of ownership is to be determined by the immediate and direct contribution to the actual purchase of the particular securities or deposits in the savings accounts, we think respondent's contention is borne out by the evidence in the transcript and the exhibits.

However, the trial justice apparently believed complainant's statement that an oral agreement was made in 1939 whereby both were to work and pool all their earnings and savings for their mutual benefit, and the decree granting full relief is based entirely on such finding. If complainant's testimony is thus believed, there would be conflicting evi-

dence on the issue whether the agreement in question was actually made in 1939. It is now well established that the decision of a trial justice based on conflicting evidence will not be disturbed unless it is clearly wrong. *Breard* v. *Ouimette,* 78 R. I. 304, 308; *Mimande* v. *Marino,* 76 R. I. 342, 344; *Lisker* v. *Monti,* 74 R. I. 310, 315. If complainant's testimony in that regard is believed, we cannot say that this finding is clearly wrong and therefore we will not disturb it.

However, such an agreement, if made, would not relieve him of the obligation to reasonably support his wife. Furthermore, if the relief granted is to be governed by the terms of the agreement as found in the decree, it was incumbent upon complainant, who was seeking equity, to do equity, and to show by a preponderance of evidence that he had complied in good faith with the agreement. In other words, before he would be entitled to a summary accounting and order making equal division of all the assets between the parties, he had the burden of showing that he had complied with such agreement in good faith and had contributed all his earnings and savings to the common fund.

We are not convinced from an examination of the transcript and exhibits that he discharged this duty. Unquestionably the respondent, who was called first to testify as a witness for complainant, gave a comprehensive, meticulous accounting of all her transactions and corroborated them by appropriate exhibits. There is no impeachment of her testimony in this respect. Further, the evidence makes it clear that she was at all times a hard-working, frugal and saving person, whose good management accumulated the substantial assets. Her conduct shows full compliance with the terms of the agreement as found by the trial justice.

On the other hand complainant's testimony was mostly of a general nature without corroboration in vital respects even where that would reasonably be available, and in other particulars it was open to serious question on credi-

bility. We are not convinced from this record that he contributed all his wages and otherwise in good faith lived up to the alleged agreement. Nor do we think that he could take several winter vacations in Florida at the minimum expense as stated by him, or that he could gratify his apparent taste for sports and extravagant dress for the insignificant sums indicated in his testimony. The cross-examination of complainant also casts considerable doubt on the weight to be given his testimony to the effect that he contributed to his wife *all* of his earnings but $12 a week.

Moreover he had the benefit of withdrawing and using some of his claimed contributions, particularly certain war savings bonds, and it appears that the summary accounting and order as made by the trial justice may have given him double payment in that respect. In other words, if the amount of such bonds is included in the list of gross assets which were acquired by respondent, and no corresponding credit is allowed to her for turning over these bonds or their value to complainant for his personal vacation in Florida, there is a substantial mistake in the computation. Further there is a question whether such gross computation does not erroneously include the equities in certain securities and savings, which were built up entirely out of respondent's earnings and savings *before* she was married and *before* the alleged agreement.

In the circumstances, therefore, we are of the opinion that the trial justice erred in summarily dividing the assets equally between the parties. In our judgment the complainant is entitled on the bill and evidence to no more than an equitable division of the assets based upon a full accounting. Such an accounting cannot be made satisfactorily on this record because of the manner in which the cause was tried and the nature of the evidence. Apparently the respondent assumed from the manner of pleading and procedure that an accounting, if found to be warranted, would be made later by both parties before the court, or by an auditor or

master appointed for that purpose under G. L. 1938, chap. 590, §2. As a result, all of the detailed evidence, particularly as to the complainant's good faith and alleged contributions, which ordinarily would be produced on a full accounting, is not in this record.

The numerous transactions cover a long period of years and in our judgment the evidence is of such a complicated and confusing nature that the case comes within *Davis* v. *Girard*, 80 R. I. 235. Such a full accounting should not include the equities acquired solely by the respondent out of her own earnings before the alleged agreement and those similarly acquired by her after the separation of the parties, which belong to her. Nor should it credit complainant's alleged contributions under the agreement with the amounts which are found to be reasonably necessary for the support of his wife and the household. Further, the complainant should be charged for withdrawals or use, if any, of the contributions under the agreement, the benefits of which were enjoyed only by him and not shared with his wife.

The respondent's appeal is sustained in part, and the cause is remanded to the superior court for a full accounting based on the agreement as found, and for the entry of a new decree in accordance with this opinion.

BAKER, J., did not participate in the decision.

*Nathan Perlman*, for complainant.

*John G. Murphy*, for respondent.